UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRECILA CONTRERAS,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br><br>                                    Defendant. | Case No.:  3:19-cv-00482-GPC-NLS<br><br>**REPORT AND<br>RECOMMENDATION FOR ORDER:**<br><br>**(1) DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT [ECF No. 12]; and**<br><br>**(2) GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT [ECF No. 16]** |

Precila Contreras ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g), and seeks judicial review of the Social Security Administration's ("Defendant") final decision denying her claim for disability insurance benefits.  This case was referred for a report and recommendation on the parties' cross motions for summary judgment.  *See* 28 U.S.C. § 636(b)(1)(B); ECF Nos. 12, 16, 20.  After considering the papers submitted, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross motion for summary judgment be **GRANTED**.

///

## I. BACKGROUND

### A. Procedural History

Plaintiff filed a Title II application for Social Security Disability Insurance on September 28, 2015. Administrative Record ("AR") 182-183. She alleges a disability onset date of June 30, 2014. AR 182. The Commissioner denied Plaintiff's claim initially on December 21, 2015 and on reconsideration on March 2, 2016. AR 84-108. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 8, 2017. AR 20, 36. Plaintiff was represented by counsel at the hearing. *Id.* Plaintiff and vocational expert Sonia Peterson testified at the hearing. AR 36-37.

On March 15, 2018, the ALJ issued a decision denying Plaintiff's request for benefits, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from June 30, 2014 through the date of the decision. AR 30. Plaintiff filed a Request for Reconsideration on May 7, 2018. AR 176-77. On February 13, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for judicial review purposes. AR 1-3. Plaintiff timely commenced this action in federal court.

### B. Plaintiff's Background and Testimony

Plaintiff was born on April 4, 1955. AR 85. Plaintiff claims that she suffers from hypertension, kidney problems related to high blood pressure, anxiety, panic attacks, depression, "heart condition, prior MI infarction," high cholesterol, headaches, and "poor sleep." AR 248.

Regarding education, Plaintiff has received advanced education. AR 249. Plaintiff has held several jobs in the medical field. From 1987-1995, Plaintiff worked as a telemetry technician at Scripps Green Clinic. AR 265; *see also* AR 53-54. Plaintiff started working as a Registered Nurse in 1995, and worked in that capacity at Scripps Green Clinic until 2002. AR 265. Starting in 2002, Plaintiff worked as a Registered Nurse at Palomar Hospital. AR 265. Plaintiff stopped working there after an incident

where she was accused of making a mistake while treating a patient, although Plaintiff testified that she felt that those accusations were unfair.[1]  AR 45-47.  Plaintiff testified that she suffered from high blood pressure from the stress caused by being accused on the mistake.  AR 51.  However, Plaintiff did not stop working immediately after the incident.[2]  AR 48-49.  Plaintiff briefly returned to work at the hospital, but stopped working three days later after the hospital expressed dissatisfaction with her performance.  AR 57-59.  The ALJ asked Plaintiff whether she would have continued working at Palomar if the incident and resulting high blood pressure had not occurred.  AR 52.  Plaintiff answered "Yes. As long as they want me to work, I will work," and indicated that she would have remained at Palomar until she reached retirement age.  AR 52.  The ALJ also ascertained that Plaintiff had received a disability settlement from her insurance company in the amount of approximately $50,000, exclusive of attorney's fees.  AR 50.

Plaintiff lives in a home with her husband and son.  AR 55-56; 104.  Plaintiff engages in several daily activities.  Plaintiff occupies herself with housework, including cleaning, gardening, cooking and grocery shopping.  AR 65-66; 57.  She also watches television and is still able to sometimes drive.  AR 66, 57.  Plaintiff testified that she was unable to return to work because of physical and mental impairments.  AR 61.  When probed by the ALJ as to what her physical limitations were, Plaintiff responded "[d]riving or thinking or walking."  AR 61.  The ALJ attempted to clarify this point by asking Plaintiff how far she could walk.  AR 61.  Plaintiff replied, "not so far."  AR 61.  Plaintiff testified that she had difficulty walking following an incident in which she had fallen from a tree and had left her suffering from scoliosis and broken ribs.  AR 61-62.

During her examination by her attorney, Plaintiff testified to hearing and seeing

---

[1] During the hearing, the ALJ questioned Plaintiff about the incident and asked what the hospital's allegations were.  Plaintiff provided the following answer: "Like, I didn't empty - - the drippy machine, which I did, and just didn't chart it."  AR 46.

[2] Plaintiff could not specify how much time elapsed between the incident and when she stopped working.  *See* AR 47-48.  Plaintiff claimed to have only stopped working after her doctor advised her against continuing to work.  AR 47-48.

things and to attempting suicide on two occasions.[3]  AR 67-68.  Plaintiff also testified to suffering from memory loss and being unable to recall the questions asked by the ALJ or her answers.  AR. 72-73.

## C. Documentary Medical Evidence

### 1. Physical Health[4]

#### A. *Dr. Chang*

Plaintiff's medical records show that she was a patient at Sharp Rees-Stealy Med Group ("SRSMG"), that Dr. Chang acted as her primary care physician, and that Plaintiff received medical treatment from Dr. Chang between June 30, 2014 and February 24, 2016.  *See generally* AR 311-342; 348-366; 435; 437; 561-568; 576-78; 674-76.  The records show that Plaintiff visited Dr. Chang at regular intervals for check-ups and follow-ups related to her visit to the emergency room on June 30, 2014.  *See generally id.* These intervals varied and included several appointments in quick succession following Plaintiff's visits to the emergency room in June 2014 and February 2015, as well as more routine check-ups on a monthly to several monthly basis.  AR 312-325; 484; 348-356; 357-366; 327-342.  Records also show that Dr. Chang prescribed Plaintiff with medication for high-blood pressure, high cholesterol, and depression.  *See id.*

On September 25, 2015, Dr. Chang answered a request from Plaintiff to answer questions regarding her medical condition as part of her effort to obtain disability benefits from her insurance company.  AR 581; *see* also AR 435-36.  In his written responses, Dr. Chang diagnosed Plaintiff with "Hypertension, CKD, Pre[-]Diabetes, High Cholesterol, Old MI, [and] Stress."  AR 435.  In response to Plaintiff's query as to whether she was "totally disabled from doing [her] job as a nurse" as of June 2014, Dr. Chang wrote "Yes,

---

[3] There is some contradiction in Plaintiff's testimony as to whether she actually attempted suicide.  AR 69-70.  When questioned by her attorney, Plaintiff appeared to suggest that she had contemplated suicide, but stopped before an actual attempt.  AR 70.  Plaintiff also testified that she could not remember if she actually made an attempt.  AR 69-70.

[4] Because Plaintiff's physical health and assessment is not in dispute here, the Court only addresses physical health briefly in this report.  *See* ECF No. 20 at 2.

unfortunately you have not been able to work due to job stress." *Id.* Finally, in response to Plaintiff's question about why she was disabled and what her limitations were, Dr. Chang responded "Uncontrolled HTN, stress from work [sic] will need to reduce overall stress." *Id.*

## B. *Dr. Wong and Dr. Bitonte*

Dr. Wong prepared a Disability Determination Explanation opinion for the initial stage of Plaintiff's process and Dr. Bitonte issued a Disability Determination Explanation opinion at the reconsideration stage of Plaintiff's process. AR 84-95; 96-108. Dr. Wong found Plaintiff partially credible. AR 90. Dr. Wong noted that Plaintiff had been non-compliant with her blood-pressure medication, that her physical examination was "entirely unremarkable," and concluded that "[t]he evidence does not support fully disabling severity." AR 90. Dr. Bitonte also determined that Plaintiff's statements were partially credible on reconsideration. AR 105. Both doctors found that Plaintiff was not disabled, issued the same ratings for Plaintiff's exertional limitations, and determined that Plaintiff had the requisite residual functional capacity to continue her previous work as a registered nurse. AR 93-95; 106-08.

### 2. Mental Health

#### A. *Dr. Greytak*

Dr. Greytak performed a Comprehensive Psychiatric Evaluation of Plaintiff on December 2, 2015. AR 543. As part of that evaluation, Dr. Greytak opined that Plaintiff was "not delusional," denied hallucinations, was euthymic in mood, and that her speech was normal. AR. 546. Dr. Greytak determined that Plaintiff's condition was "most consistent with . . . a DSM 5 diagnosis of generalized anxiety disorder." AR 548. With respect to Plaintiff's functional capacity, Dr. Greytak opined that Plaintiff was not impaired from the performance of simple instructions, but mildly impaired in other activities including, but not limited to, her ability to perform complex tasks, concentrate and perform work tasks "without special or additional supervision." AR 547-48. Dr. Greytak opined that Plaintiff's psychiatric prognosis was "fair." AR 548.

## B.    *Dr. Khatchatrian and Mary Ellen Bennett, LCSW*

Plaintiff's medical records indicate that she started receiving treatment from Psychiatric Centers at San Diego ("PCSD") on February 16, 2016.  AR 623.  On intake, Plaintiff was described as presenting with a variety of symptoms including "anxious/fearful thoughts . . . depressed mood, [and] difficulty concentrating."  *Id.*  Plaintiff was seen by two practitioners at PCSD.  *See* AR 594-672.

Plaintiff had an initial psychiatric evaluation with Dr. Khatchatrian on September 21, 2016.  AR 658.  Dr. Khatchatrian noted that Plaintiff reported suffering from a number of different symptoms including irritability, agitation, hyperactivity, insomnia, impaired memory and concentration, and "impulsivity and spending sprees."  AR 658.  Plaintiff "reported fleeting suicidal ideation, but denied any intentions or plans."  AR 658.  Dr. Khatchatrian assessed Plaintiff's mental status as follows: "Patient's appearance is appropriate . . . . Behavior is described as unremarkable . . . . Patient's mood is anxious, irritable, and hyper.  Short term memory is impaired and recalled 0/3 words in 5 min . . . . Attention is maintained and serial 3 intact . . . . Thought processes show flight of ideas.  Thought processes are 1, 1, 1, 1 and 1.  Patient has visual hallucinations.  Thought content reveals paranoia and ideas of reference  . . . ."  AR 660.  On October 5, 2016 Dr. Khatchatrian noted "moderate improvement" in Plaintiff's condition.  AR 654.  By October 26, 2016, Dr. Khatchatrian reported "good improvement" in Plaintiff's condition and further noted "good improvement" in Plaintiff's condition on November 17, 2016, December 8, 2016, and January 6, 2017.  AR 642, 632, 625.

Plaintiff also had numerous sessions with a therapist, Mary Ellen Bennett, beginning on March 3, 2016 and continuing through December 8, 2016.  AR 620, 636; *see also* AR 594-622; 629-631; 636-641; 644-649; 664-672.  During the course of her therapy sessions Plaintiff described suffering from anxiety, financial issues, and struggles with her working situation.  *See e.g.,* AR 618, 636.  Plaintiff's therapist encouraged her avoid activities such as trips to the casino.  AR 667.  On April 18, 2016, Plaintiff's therapist reported that she agreed with Dr. Chang's opinion that Plaintiff was "too

impaired to work as a nurse." AR 609.

## C. *Dr. Chang*

Plaintiff began reporting more substantial issues with her mental health to Dr. Chang, her primary care physician, on December 10, 2015. AR 561. Dr. Chang noted that Plaintiff "ha[d] not expressed the extent of the stress and how it was affecting her until today's visit." *Id.* Dr. Chang gave Plaintiff a prescription for Zoloft and referred her to psychiatry. AR 564. On January 11, 2016, Dr. Chang reported that Plaintiff had disclosed the full extent of her family history of mental illness. AR 565. Plaintiff reported that her sister had committed suicide and that her daughters also suffer from depression. *Id.* Dr. Chang stated that "this seems to be a very strong family history of mental illness." *Id.* Dr. Chang opined that "[a]t this time [Plaintiff] is clearly not able to work or function because of the mental illness," but noted that Plaintiff "seems to be doing well with Zoloft 50 mg daily." AR 568. In his treatment notes from February 24, 2016, Dr. Chang opined that Plaintiff's stress "will clearly affect her ability to perform work as a nurse," described that Plaintiff's recent openness about her condition explained why "she was not able to perform at her job," and led him to conclude that Plaintiff "should not work." AR 576. Dr. Chang also noted in his assessment that Plaintiff's son had attempted to commit suicide and that Plaintiff "is now a caregiver at home for him." AR 578.

## D. *Lee Reback Psy. D., P.A. and Brady Dalton, Psy. D.*

As part of Plaintiff's initial disability determination, Lee Reback Psy. D., P.A. reviewed Plaintiff's medical records. AR 90-92. On December 20, 2015, Reback concluded that Plaintiff's mental status was "mildly impaired" and that "[f]rom a mental health perspective, the claimant appears to have the capacity to perform daily and routine activities." AR 92.

On March 2, 2016, Brady Dalton Psy. D. reviewed Plaintiff's medical records and her disability determination as part of a reconsideration of Plaintiff's disability status. AR 102-104. Dalton noted that Plaintiff claimed that her condition began worsening

before her evaluation by the consultative examiner. AR 104. Dalton opined that "it appears both initial and recon allegations were appropriately assessed initially and there is no change in circumstance at recon." *Id.* Thus, Dalton concluded that "a non-severe psych rating appears reasonable, and initial findings . . . are adopted." *Id.*

### 3. Vocational Expert's Testimony

Vocational Expert ("VE") Sonia Peterson testified at the hearing. AR 36, 73. She characterized Plaintiff's vocational background as a general duty nurse at the medium exertion level, with a Specific Vocational Preparation ("SVP") of 7. AR 48. The ALJ asked the VE for other jobs that Plaintiff's skills could transfer to. AR 74. At the medium exertion level, the VE suggested home attendant with an SVP of 3 and 800,000 jobs in the national market and phlebotomist which also had an SVP of 3 and 120,000 jobs in the national market. AR 74-75. At the light level, the VE suggested hospital admitting clerk with an SVP of 4 and 80,000 jobs in the national market, and cardiac telemetry with an SVP of 5 and 60,000 jobs in the national market. AR 75-77. The VE also suggested home attendant with an SVP of 3 and "about 400,000 jobs nationally." AR 77-78.

The ALJ posed the following hypothetical to the VE, asking whether an individual with the same age, education, and experience as Plaintiff, who "can perform at the medium exertional level" but suffers from mental health issues such that they can perform work that requires simple or detailed tasks, but not complex tasks, could perform the Plaintiff's past work as a nurse. AR 78-79. The VE opined that a person with such limitations would not be able to perform the Plaintiff's past work. AR 79. The ALJ then asked whether the hypothetical person could perform the other jobs proposed by the VE, excluding the job of cardiac monitor. AR 79. The VE answered that such a person could perform those jobs. AR 79.

The ALJ then altered the hypothetical, and asked the VE whether the same person described in the first hypothetical, placed at "light exertion work," could perform the VE's suggested jobs, excluding the jobs of home attendant and cardiac monitor. AR 79.

The VE answered that such jobs could be performed.  AR 79.

Finally, the ALJ altered the hypothetical for a third time, asking the VE whether her evaluation would change if the hypothetical person suffered from more severe mental health issues.  AR 79.  Specifically, the ALJ asked the VE whether her assessment would change if the hypothetical person had one day a week where they "are not giving conscientious work performance" and "where they're 30 percent off task."  AR 79-80. The VE responded "[i]n my experience, that person would not pass a probationary period. So there would be no work available."  AR 80.

Plaintiff's attorney asked the VE how many days per month a person could miss and retain their employment.  AR 80-81.  The VE replied that, assuming a job requires a five day work week, "[i]f somebody's missing two days a month consistently, there's no work available at all."  AR 81.  Finally, Plaintiff's attorney asked the VE what her assessment would be if a person was "consistently off task . . . at least 15 percent of the day." AR 81.  The VE answered that such a person would not be able to work.  AR 81.

## II.  THE ALJ DECISION

### A.  The Sequential Process

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months.  42 U.S.C. §§ 423(d), 1382c(a)(3).  The Social Security regulations establish a five-step sequential evaluation to determine whether an applicant is disabled under this standard.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b).  If not, then at step two the ALJ must determine whether the applicant suffers from a severe impairment or a combination of impairments.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(c).  If the impairment is severe, at step three the ALJ must determine whether the applicant's impairment or

combination of impairments meets or equals an impairment contained under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(a)(4)(iii), 416.920(d). If the applicant's impairment meets or equals a listing, he or she must be found disabled. *Id.*

If the impairment does not meet or equal a listing, the ALJ must determine the applicant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e). Then, the ALJ must determine at step four whether the applicant retains the residual functional capacity to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(f). If the applicant cannot perform past relevant work, at step five the ALJ must consider whether the applicant can perform any other work that exists in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(g).

The applicant carries the burden to prove eligibility from steps one through four but the burden at step five is on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### B.    Substance of the ALJ's Decision

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2014, the alleged onset date. AR 22. At step two, the ALJ determined Plaintiff's depression, anxiety, and hypertension with kidney diseases constituted severe impairments. AR 23. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that would meet or medically equal the severity of any listed impairments. AR 23-24. The ALJ next established that Plaintiff retained the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(b) except she could not perform a job involving complex tasks or decisions. AR 24.

At step four, the ALJ determined Plaintiff could not perform her past relevant work as a general duty nurse. AR 28-29. However, proceeding to step five, the ALJ concluded that Plaintiff's skills were transferable to other occupations that "exist[ed] in significant numbers in the national economy." AR 29. Therefore, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act from June 30, 2014, the

alleged disability onset date, through March 15, 2018, the date of the decision.  AR 30.

## III.  Legal Standard of Review

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards.  *Batson*, 359 F.3d at 1193.  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotation and citation omitted).  It is a "highly deferential" standard of review.  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (internal quotations and citation omitted).  If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld.  *Molina*, 674 F.3d at 1111.  It is not the Court's role to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff.  *Batson*, 359 F.3d at 1193.

## IV.  DISCUSSION

In challenging the ALJ's denial of benefits, Plaintiff argues the ALJ committed reversible error and did not base his decision on substantial evidence because he (1) did not properly credit Plaintiff's testimony, and (2) failed to properly consider the opinions of Plaintiff's treating doctors.  ECF No. 12 at 7-15.  The Court will address each of these in turn.

### A.  The ALJ Properly Considered Plaintiff's Testimony

In making a final determination, an ALJ must determine the extent to which a claimant's symptoms "can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [those] symptoms affect [the claimant's] ability to work."  20 C.F.R. § 404.1529(a).  A claimant's subjective symptoms must be considered in a disability evaluation.  *Id.*; *Smolen v. Chater*, 80 F.3d

1273, 1291 (9th Cir. 1996). However, those statements alone cannot be decisive on a disability claim. 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is the province of the ALJ to make findings of fact as to a claimant's credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

In deciding whether to credit a claimant's testimony about subjective symptoms or limitations, an ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196; *Smolen*, 80 F.3d at 1281. Under the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281. "[T]he claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. If this step is satisfied, and there is no affirmative evidence that the claimant is malingering, then the ALJ must determine the credibility of the claimant's subjective complaints. At step two, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine whether and how these symptoms limit a claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). The ALJ may reject the claimant's testimony about the severity of symptoms as long as he gives clear, specific, and convincing reasons for doing so. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Batson*, 395 F.3d at 1195.

In weighing a claimant's credibility, the ALJ may consider the following factors: 1) reputation for being honest; 2) inconsistencies in the claimant's testimony; 3) inconsistencies in the claimant's conduct; 4) daily living activities; 5) work record; and 6) physician's testimony concerning the symptoms alleged. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (quoting *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). Daily activities may be grounds for an adverse credibility

finding if the claimant is able to perform substantial physical functions that could be transferred to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In rejecting a plaintiff's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing *Smolen*, 80 F.3d at 1285). However, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" at the first step of the credibility analysis. AR 25. However, at the second step of the credibility analysis, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 25. Therefore, the Court must determine whether the ALJ supplied clear, specific and convincing reasons for disregarding Plaintiff's subjective testimony. *See Lingenfelter*, 504 F.3d 1036.

Plaintiff takes issue with the ALJ's conclusion at this second step, specifically contending that the ALJ's explanation for disregarding Plaintiff's subjective testimony is insufficient because he "failed to make adequate specific findings stating clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms." ECF No. 12 at 12. Plaintiff notes that the ALJ expressed his conclusion on her credibility in a single sentence and argues that the ALJ's conclusion amounts to little more than a recitation of "the 'magic words' that he has correctly considered all of the medical evidence, testimony, and opinion evidence," but that "his actual analysis is to the contrary." *Id.*

Upon review of the ALJ's opinion, however, the Court does not agree with Plaintiff's characterization of the opinion. While it is true that the ALJ expresses his conclusion about Plaintiff's subjective statements in a single sentence, it acts as the precursor to his explanation and analysis of the record. *See* AR 25-27. The ALJ in fact continues to opine for three pages as to inconsistencies, both with the medical record and Plaintiff's daily activities. *Id.*

### 1. *Medical Record*

With respect to Plaintiff's mental health, the ALJ engaged in an extensive discussion of Plaintiff's medical records. *See* AR 26-27. The ALJ noted that medical records from September 2016 showed that Plaintiff struggled to remember words "after five minutes but had adequate attention or serial 3s (18F/17)." AR 27, 660. The ALJ further considered the fact that Plaintiff had reported improvement in her condition to her provider in November 2016 and that her provider noted that Plaintiff had "good sleep, appetite, energy, memory, and concentration in January 2017." AR 27. The ALJ cited to records in Exhibit 17F as support for these reports. AR 27, 625, 642-43. Finally, the ALJ noted that while Plaintiff continued on her medications, her "treatment recorded reflected little intervention beyond early 2017." AR 27. The ALJ cited to exhibits 13F, 15F, and 18F in the record to support this assessment. AR 27; 587-590, 592-593, 644-672. As a result, the ALJ concluded that although there was support for the notion that Plaintiff "suffered some interference in mental health," the "lack of reported problems prior to 2016 suggest[s] caution in finding significant persistent issues(8F)." AR 27.

The ALJ also considered the fact that the consultative examiner, Dr. Greytak, "opined mild impairments with detailed and complex instructions . . . performing work without additional supervision, and maintaining concentration, persistence, and pace." AR 27. The ALJ further noted that Plaintiff "reported little mental health deficit to this examiner and presented euthymic during the examination." AR 27. To support these reports, the ALJ cited to Exhibit 7F, the record of Dr. Greytak's examination. AR 27; 541-49. However, the ALJ qualified his evaluation of Dr. Greytak's opinion by noting

that Plaintiff had not been treated for mental health issues at the time she was examined by Dr. Greytak and that the record showed that Plaintiff had complained of and been treated for mental health issues after Plaintiff was examined by Dr. Greytak. AR 27. The ALJ pointed to Exhibit 9F, which included some of Plaintiff's treatment records from PCSD as support. AR 27; 569-78. Nevertheless, the ALJ reiterated the fact that Plaintiff's medical records "noted treatment and medications for . . . depression and anxiety, but with limited intervention." AR 27. Again, several Exhibits in the record were cited as support. AR 27; 587-590, 592-619.

## 2. *Activities of Daily Living*

In assessing the credibility of subjective complaints, the ALJ may consider the claimant's daily activities. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529(c)(3)(i). Differences between a claimant's allegations and her conduct qualify as substantial evidence that may be used in a credibility determination. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The Court is aware, though, "that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n.7). But, where a level of activity is inconsistent with a claimant's claimed limitations, then the activities bear on a claimant's credibility. *Id.*

Here, the ALJ addressed inconsistencies between Plaintiff's reported disabilities and her self-reported activities of daily living, when assessing the credibility of her subjective testimony. AR 26. Specifically, the ALJ considered the following activities of daily living reported by Plaintiff. First, the ALJ highlighted Plaintiff's testimony at the hearing that "she engages in gardening, some television watching, and cooking" and that Plaintiff "is able to do grocery shopping." AR 25. Second, the ALJ took note of Plaintiff's statements to Dr. Chang, her primary care physician. AR 26. Plaintiff had

reported to Dr. Chang that Plaintiff's son had been released to her custody in the aftermath of a suicide attempt. AR 26, 576. The ALJ perceived this fact to be evidence that Plaintiff "plainly had a retained ability to provide care to at least her son." AR 26. The ALJ further found that, although Plaintiff was not able to return to her prior work as a nurse, the fact that she had accepted responsibility and was caring for her son "indicate[d] retained capacity to function in other vocational aspects of caregiving." AR 26.

The parties dispute whether the ALJ's reasoning on this point is sufficient. Plaintiff argues that the ALJ "cites no facts in support of his contention, which can only be regarded as speculation, as is his finding that [P]laintiff's skills would be transferrable to semi-skilled work." ECF No. 12 at 10. To support this argument, Plaintiff contends that her situation is the same as "contemplated in *Smolen*," albeit without any further elaboration. *Id.* In response, Defendant argues that Plaintiff fundamentally misunderstands "the applicable standard of 'transferability.'" ECF No. 16-1 at 5. Defendant claims that the relevant question for transferability is not whether Plaintiff's activities "are the very tasks one would perform in a work setting," but "whether the skills required to perform a particular daily activity . . . are similar to those required to perform certain jobs." *Id.*

Although Defendant does not directly cite authority to support this claim, the Court finds that his interpretation of the transferability requirement is supported by relevant regulations. *See* 20 CFR § 404.1568(d)(1) ("We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."); *see also* 20 CFR § 404.1568(d)(3) ("There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs."). Further, Defendant cites to authority from the Ninth Circuit holding that when a claimant consistently performs physical activities "that are transferable to a work setting, a specific finding as to this fact may be sufficient to

discredit a claimant's allegations." *Morgan v. Commissioner*, 169 F.3d 595, 600 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Defendant also cited to precedent from the Ninth Circuit that sets a low threshold for the validity of an ALJ's conclusion regarding subjective testimony. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); (ECF No. 16-1 at 5.)

In *Stubbs-Danielson*, the Ninth Circuit evaluated the sufficiency of the following statement in an ALJ's opinion: "'[t]he claimant's allegations as to the intensity, persistence and limiting effects, of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence. The record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, doing laundry and helping her husband in managing finances.'" 539 F.3d at 1175 (citation omitted). The Ninth Circuit also noted the ALJ's statement that "'[t]hese activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.'" *Id.* (citation omitted). The Ninth Circuit rejected arguments that the ALJ had failed to meet his burden in disregarding the claimant's testimony, stating "[t]he ALJ sufficiently explained his reasons for discrediting claimant's testimony." *Id.*

Given these precedents, this Court cannot say that the ALJ's treatment of Plaintiff's subjective testimony is insufficient. The ALJ specifically pointed out that Plaintiff took her son in and cared for him, and this activity was suggestive that she could still perform the caretaking functions she may have had in her previous career. Further, the ALJ noted that she still cooked, grocery shopped, and did gardening—all tasks that could at least suggest she could perform the basic demands required in the workplace.

Furthermore, upon an independent review of the ALJ's opinion, the Court finds that the ALJ provided additional reasons for finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the . . . evidence in the record," that Plaintiff failed to address in her submissions to this Court. AR 25, 26; *see* ECF No. 12; ECF No. 20. For example,

the ALJ noted that "[d]espite the claimant's reported mental health issues, she continued to travel to see family members and spend time with others" and that she had gone "to the casino." [5]  AR 26.  These reasons also tend to support the conclusion that the ALJ provided "'specific, clear and convincing reasons for'" disregarding Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).

Plaintiff's only specific citation in support of her position is to *Smolen*, but without further elaboration.  Plaintiff cited *Smolen* earlier in her brief saying in part that "'many home activities may not be easily transferrable [sic] to a work environment where it might be impossible to rest periodically or take medication.'" (ECF No. 12 at 9 (quoting *Smolen*, 80 F.3d at 1284 n.7).  However, as previously mentioned, the ALJ did not just rely on routine home activities when he concluded Plaintiff had the capacity to perform caregiving functions.  The ALJ specifically referenced the care giving functions related to her son who was released to her care.

In addition, parties also appear to dispute the ALJ's treatment of Plaintiff's husband, Neal Contreras's, testimony.  Plaintiff cited to his testimony regarding how long Plaintiff can concentrate for and her physical limitations as further corroboration for her own statements as to her abilities.  ECF No. 12 at 9.  The ALJ has rejected this testimony, stating that the statements were not from "an unbiased individual or a medical source," and that they "appear[] exaggerated given the objective medical evidence and claimant's own admissions" that she engaged in gardening and other hobbies and cared for her adult son when it was needed.  AR 28.  Defendant argues that Plaintiff has waived any objections to the ALJ's treatment of the opinion of Plaintiff's husband.  ECF No. 16-1 at 7.  Defendant contends that "the ALJ reasonably rejected Mr. Contreras' statement as exaggeration" and that although Plaintiff references the opinion of her husband in her brief, her failure to specifically challenge the ALJ's conclusion with respect to this opinion has waived any potential argument.  ECF No. 16-1 (citing ECF No. 12 at 7; AR

---

[5] The ALJ also mentioned that Plaintiff was encouraged by her providers "to do other things."  AR 26.

28). To support this claim, Defendant cites to precedent dealing with the waiver of unraised arguments in the appellate context. *See* ECF No. 16-1 at 7 (citing *Thrasher v. Colvin*, 611 Fed. Appx. 915, 918 (9th Cir. 2015); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)). Regardless of the waiver issue, the ALJ's treatment of Plaintiff's husband's opinion appears to be sufficient. *See* AR 28. For example, in *Smolen*, the court took issue with the ALJ's rejection of testimony from members of the claimant's family, finding that "a wholesale dismissal of the testimony of all the witnesses as a group . . . does not qualify as a reason germane to each individual who testified." 80 F.3d at 1289. The *Smolen* court also held that a lay witness's testimony cannot be disregarded on the grounds that the witness is related to the claimant. *Id.* Here, the ALJ does neither. The ALJ specifically disregarded Mr. Contreras's opinion on the grounds that he was biased and that his opinion appeared to be exaggerated in comparison to other medical evidence in the record. AR 28. The ALJ also cited specific examples in the record to support his conclusion. *Id.* Thus, the ALJ met his burden in disregarding the opinion. *See Smolen*, 80 F.3d at 1289.

In summary, the Court finds that the ALJ's citations to the medical record and evidence of Plaintiff's daily activities are specific enough to constitute substantial evidence to support the ALJ's credibility finding. *See* Social Security Ruling 96-7p (credibility findings "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements"). It was appropriate for the ALJ to consider the medical record when assessing Plaintiff's credibility. *See Smolen*, 80 F.3d at 1284 (finding ALJ can consider objective medical evidence when assessing credibility). Moreover, the Court may not second guess the ALJ's credibility determination as long as it is reasonable and supported by substantial evidence in the record. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (upholding adverse credibility determination even though there were other ways to reasonably interpret the claimant's testimony regarding daily activities).

//

**B.** **The ALJ Properly Considered the Opinions of Plaintiff's Treating Doctors**

Plaintiff next contends that the ALJ failed to properly consider the opinions of her treating physicians. ECF No. 12 at 12-15.[6] In *Lester v. Chater*, the Ninth Circuit established that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." 81 F.3d at 830 (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "The rationale behind affording the treating physician's opinion greater weight is that 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Winans v. Bowen*, 853 F.2d 643, 647 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Further, *Lester* established two standards of evidence that an ALJ must provide when disregarding the opinion of a treating physician. First, if the treating physician's opinion is uncontradicted by other medical opinions, then the ALJ can only disregard it by providing "'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Second, if the treating physician's opinion is contradicted by other medical opinions, then the ALJ is still required to "provid[e] 'specific and legitimate reasons' supported by substantial evidence in the record" in order to disregard the opinion. *Lester*, 81 F.3d at 830 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

However, an ALJ "may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). The Ninth Circuit has established a "general rule that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." *Winans*, 853

---

[6] Plaintiff does not clearly articulate whether or not she is challenging the ALJ's conclusions regarding the opinions of all of her treating physicians. ECF No. 12 at 12-15. However, Plaintiff's brief does state that "[P]laintiff's treating doctors, Dr. Chang and the treaters at PCSD, have all opined that she is significantly limited by her mental impairment." ECF No. 12 at 14. As a result, the Court will consider the ALJ's evaluation of all of Plaintiff's treating physicians.

3:19-cv-00482-GPC-NLS

F.2d at 647 (citing *Sprague*, 812 F.2d at 1230).

When evaluating conflicting medical opinions, "an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings" (quoting *Batson*, 359 F.3d at 1195) (internal quotation marks omitted); *Molina*, 674 F.3d at 1111-12 (noting an "ALJ may 'permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions'" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996))). The more consistent a medical opinion is with the record as a whole, the more weight it is given. *See* 20 C.F.R. § 404.1527(c)(4). A treating source's opinion on the nature and severity of an impairment is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. § 404.1527(d)(2). The opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings can alone constitute substantial evidence for rejecting a conflicting opinion from a treating source. *See Tonapetyan*, 242 F.3d at 1149. It is then solely the province of the ALJ to resolve the conflict. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Plaintiff contends that the ALJ failed to provide specific reasons for his decision to reject the opinions of Plaintiff's treating physicians. ECF No. 12 at 12-15. However, it is difficult to decipher what specific opinions Plaintiff contends are rejected. First, Plaintiff's citations to the record in support of this argument do not appear to be on point. For example, Plaintiff presents the following quote from the ALJ's decision as support for her argument: "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because evidence failed to substantiate the degree of limitations suggested by the claimant." AR 25; ECF No. 12 at

13. Plaintiff highlights this as an example of "'boilerplate'" language, placing special emphasis on the fact that the ALJ used the phrase "his or her" to describe Plaintiff. *Id.* However, this statement appears to refer to Plaintiff's own subjective statements rather than the statements of her treating physicians. *Id.* Since Plaintiff's treating physicians are not even addressed in the passage, it fails to provide any meaningful support for her argument or substantiate whether the ALJ actually disregarded the opinions of Plaintiff's treating physicians. *See* AR 25. Second, Plaintiff does not appear to explain with any specificity how the ALJ's decision rejected the opinions of Plaintiff's treating physicians in contravention of the applicable legal standard. *See id.* at 12-15. Plaintiff somewhat clarified her position in her reply to Defendant's cross-motion for summary judgment, where she contended that the ALJ "relies primarily on his discussion of plaintiff's daily activities" to reject the opinions of Plaintiff's treating physician. ECF No. 20 at 5. However, after reviewing the ALJ's decision, it appears that the discussion of "plaintiff's daily activities" was also related to the issue of Plaintiff's subjective testimony, rather than her treating physicians. *See id.*; AR 25-27.

Regardless, the Court has reviewed the ALJ's decision for its discussion and citation to Plaintiff's various treating physicians and will discuss the most relevant portions of the opinion below.

With respect to Dr. Chang, the ALJ cited to his January 2016 records where he stated that Plaintiff is "clearly not able to work or function because of the mental illness and how it affects her thought process." AR 26 (citing Exhibit 8F). The ALJ noted that Dr. Chang also later stated that a decrease in concentration, focus, and stress would also impact her ability to work as a nurse secondary to her anxiety and depression. AR 26. The ALJ noted that this opinion was given some weight, but that Dr. Chang also acknowledged that Plaintiff's son was released to her care and that fact showed that Plaintiff at least retained an ability to care for her son. Thus, while the ALJ did not give full weight to this treating physician opinion, he gave a specific and legitimate reason for discounting it.

Also with respect to Dr. Chang, the ALJ referenced one specific letter written by him for purposes of disability insurance:

> The claimant's provider, Alan Chang, M.D. provided a note for the record in September 2015. He noted the claimant is not able to work due to the stress of her position secondary to hypertension, chronic kidney disease, prediabetes, high cholesterol, and old myocardial infarction, and stress. He noted primarily the claimant will need to reduce overall stress (11F). The opinion of the provider falls short of a detailed vocational assessment. The opinion appears to rely on the claimant's current non-work responsibilities, not a formal assessment of vocational limitations or abilities. The opinion received little weight accordingly. The residual functional capacity reflected limitations precluding past work, consistent with Dr. Chang's letter, but is based upon the claimant's overall records and improvement in symptoms with provided healthcare (1F, 16F, 8-9F). The claimant's providers noted some noncompliance with hypertensive medications and improvement in her condition with medication compliance (4-5F).

AR 27. The first three sentences of the ALJ's discussion of Dr. Chang's "opinion" clearly show that the ALJ is referring to the brief questionnaire Dr. Chang answered as part of Plaintiff's efforts to obtain disability benefits from her insurance, rather than as part of her Social Security claim. AR 27, 581. The fact that the ALJ specifically cited to that document, Exhibit 11F, in describing Dr. Chang's opinion further reinforces this conclusion. AR 27, 581. In giving little weight to this exhibit, the ALJ specifically stated it "falls short of a detailed vocational assessment" and was "not a formal assessment of vocational limitations or abilities." AR 27. Administrative Law Judges are allowed to reject "a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan*, 242 F.3d at 1149 (citing *Matney*, 981 F.2d at 1019); *see also Burrell*, 775 F.3d at 1140; *Molina*, 674 F.3d at 1111-12. Given that Exhibit 11F is, by any objective measure a conclusory and cursory document, the Court cannot say that the ALJ acted outside of his purview in disregarding it. *See id.*; AR 581. Further, in disregarding Exhibit 11F, the ALJ explained its deficiencies and his rationale for giving it little weight. AR 27.

Other than these two specific opinions of Dr. Chang discussed by the ALJ, the rest of the opinion indicates that the ALJ actually accepted the remainder of Dr. Chang's treatment records and opinions. Records from Dr. Chang are cited by the ALJ in his discussion of Plaintiff's medical history. *See* AR 26-27. In the discussion of consultative examiner Ryan Greytak, the ALJ specifically stated that his opinion was not given complete weight "based upon the additional treatment records and notes from the claimant's provider." Indeed, as Defendant points out, while Dr. Greytak only assessed mild limitations in the areas of concentration, persistence and pace, the ALJ put moderate restrictions in this area and the ALJ determined that Plaintiff could not perform detailed tasks while Dr. Greytak opined that Plaintiff could perform both complex and detailed tasks. *See* ECF No. 16-1 at 14; AR 548-49; AR 24. This determination by the ALJ was based on Plaintiff's treating physician records as stated. In addition, the ALJ specifically and expressly stated that his determination of Plaintiff's residual functional capacity conformed with Dr. Chang's assessment. AR 27 ("The residual functional capacity reflected limitations precluding past work, consistent with Dr. Chang's letter."). Based on the foregoing, the ALJ appears to have only rejected two specific opinions of Dr. Chang but gave reasons for doing so, and otherwise accepted Dr. Chang's treatment records and other opinions in the analysis.

As for other treating doctors, Plaintiff's treating psychiatrist was Dr. Khatchatrian and his therapist was Mary Ellen Bennett. The following passage references an opinion rendered by Dr. Khatchatrian which was given little weight by the ALJ:

> A record from a provider for the claimant in September 2017 identified the claimant as unable to serve on jury duty, or inadvisable to do so (13E). The summarily stated opinion is of limited probative value. It offered no support with medical conditions nor did it provide specific limitations precluding jury duty or vocational functioning. The undersigned relied upon medical records and opinions and gives this unsupported summarily stated suggestion little weight. (1F, 8-9F, 16F).

AR 27-28. Similar to the discussion of the form signed by Dr. Chang for disability

insurance, here, the ALJ's statement and citation indicates that he is referring only to a form signed by Dr. Khatchatrian, recommending that Plaintiff be excused from jury duty (Exhibit 13E).  AR 268.  The ALJ gives specific reasons for not affording the opinion great weight—namely that it offered no support with medical conditions and did not provide any specific vocational functioning information.  He also noted that in affording it little weight, he considered other "medical records and opinions" and cited to records from other treating physicians—both Dr. Chang's treatment records as well as those of Plaintiff's therapist at PCSD.  AR 28; *see* AR 311-425, 561-578, 594-619.  Moreover, this opinion from Dr. Khatchatrian's is another "summarily stated" recommendation that the ALJ may reject if appropriate.  *Tonapetyan*, 242 F.3d at 1149 (citing *Matney*, 981 F.2d at 1019); *see also Burrell*, 775 F.3d at 1140; *Molina*, 674 F.3d at 1111-12.

Otherwise, it appears that the ALJ specifically cited to these treating doctors and did not otherwise limit or reject their opinions and treatment notes.  For example, in the next paragraph where the ALJ explained why he gave the opinion of Dr. Reback, one of the physicians from Disability Determination Services, "partial weight,"  the ALJ stated that he had "relied upon more recent medical records in which the claimant actually received mental health counseling and specialized services, provided after the conducted reviews."  AR 28.  The ALJ cited three exhibits as support, which included Dr. Khatchatrian's treatment records. *Id.*; 625-28, 632-35, 650-663.  Thus, the ALJ actually rejected a consulting doctor's opinion due to Plaintiff's treating physician's records.

In sum, the Court concludes that based on its review of the ALJ's opinion, the ALJ properly gave specific reasons for rejecting the limited opinions he did from Plaintiff's treating doctors, and otherwise accepted their medical treatment records and opinions in forming his decision.

## IV.    CONCLUSION

The Court finds that the ALJ's decision to deny Plaintiff's benefits is supported by substantial evidence.  Accordingly, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross motion for summary

judgment be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties on or before **January 13, 2020**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **January 21, 2020**. The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's order. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: December 16, 2019

Hon. Nita L. Stormes
United States Magistrate Judge