UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PRECILA CARDINAL CONTRERAS,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendants.

Case No. 3:19-cv-00482-GPC-NLS

**ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER ADMININSTRATIVE PROCEEDINGS.**

**[ECF No. 12, 16, 21.]**

Precila Contreras ("Plaintiff") seeks judicial review of the Social Security Administration's ("Defendant") final decision denying her claim for disability insurance benefits. (ECF No. 1.) This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B); (ECF Nos. 12, 16, 21.) After careful consideration of Magistrate Judge Nita L. Stormes' report and recommendation ("R&R"), the pleadings, the supporting documents, and the applicable law, the Court **DECLINES TO ADOPT** the Magistrate Judge's R&R, **GRANTS** the Plaintiff's Motion for Summary Judgment, **DENIES** the Defendant's Motion for Summary Judgment and **REMANDS** this matter for further administrative proceedings.

1

# I. Background

## A. Procedural Background

On September 28, 2015, Plaintiff filed a Title II application for Social Security Disability Insurance, alleging a disability onset date of June 30, 2014. Administrative Record ("AR") at 182. Plaintiff alleges that she suffers from hypertension, kidney problems related to high blood pressure, anxiety, panic attacks, depression, a "heart condition, prior MI infarction," high cholesterol, headaches, and "poor sleep." (AR 248.) Plaintiff's claims were initially denied on December 21, 2015 and again upon reconsideration on March 2, 2016. (AR 84–108.)

On March 16, 2016, Plaintiff requested a hearing before an Administrative Judge ("ALJ"), which was held on December 8, 2017. (AR 20, 36.) Plaintiff and vocational expert Sonia Peterson testified at the hearing. (AR 36–37.) On March 15, 2018, the ALJ found Plaintiff was not disabled and denied her request for benefits. (AR 30.) On May 7, 2018, Plaintiff filed a Request for Review of Hearing Decision. (AR 176–77.) On February 13, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–3.)

On March 13, 2019, Plaintiff timely commenced the instant action seeking judicial review of the Commissioner's decision. (ECF No. 1.) On May 17, 2019, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 6, 7.) On May 12, 2019, Plaintiff moved for summary judgment or remand. (ECF No. 12.) On September 30, 2019, the Commissioner cross-moved for summary judgment and responded to Plaintiff's motion. (ECF Nos. 16, 17.) On October 22, 2019, Plaintiff filed a reply to Defendant's cross-motion and response. (ECF No. 20.) On December 16, 2019, the Magistrate Judge issued the R&R and no objections have been filed. (ECF No. 21.)

### i. Plaintiff's Background & Testimony

Plaintiff was born on April 4, 1955. (AR 85.) Plaintiff has received advanced education in nursing and has held several jobs in the medical field. (AR 249.) Plaintiff worked for fifteen years at Scripps Green Clinic – eight as a telemetry technician from

1987 to 1995 and seven as a Registered Nurse from 1995 to 2002. (AR 53–54, 265.) In 2002, Plaintiff transferred to Palomar Hospital. (AR 265.)

Plaintiff claims that she suffers from the following mental and emotional conditions: depression, anxiety, panic attacks, and "poor sleep." (AR 85–86.) In addition, she suffers from various physical conditions, including hypertension, kidney problems related to high blood pressure, "heart condition, prior MI infarction," high cholesterol, and headaches. (AR 248.)

Plaintiff lives in a home with her husband and son. (AR 55–56, 104.) Plaintiff occupies herself with housework, including cleaning, laundry, ironing, and cooking, for about "an hour or two" daily. (AR 57, 65–66, 280–81.) Plaintiff reports "easily get[ting] tired" doing her housework. (AR 280–81.) For about one to two hours per week, she goes grocery shopping at the local store, a Sprouts located about five minutes from her home, and occasionally drives there. (AR 57–58, 65–66, 282.) She also "engages in gardening," an activity she describes as "talk[ing] to [her] plants [and her] flowers basically." (AR 57, 66.) In addition, Plaintiff watches "some television," though she has trouble concentrating for more than 20 to 30 minutes at a time. (AR 57, 66, 284.)

Plaintiff needs to rest for about 10 to 20 minutes after walking every 100 to 200 feet during her daily activities. (AR 284.) She cannot walk "so far" and, more generally, has limitations "driving or thinking or walking." (AR 61.) Plaintiff's difficulty walking stems from an accident in which she fell from a tree resulting in scoliosis and broken ribs. (AR 61–62.)

At the December 8, 2017 hearing, Plaintiff testified that she stopped working as a nurse at Palomar after an incident where she was wrongfully accused of failing to empty the "drippy machine." (AR 47.) Plaintiff claimed that she had done that, but "just didn't chart it." (AR 45–47.) Plaintiff was written up for the mistake and then stopped working because she "got stressed out." (AR 46–47.) Plaintiff later suffered from high blood pressure due to the stress caused by being accused of making that mistake. (AR 51.)

Plaintiff attempted to work some months after the incident. (AR 41–42.) She

3

testified that, despite feeling "very stressed out" and "nervous," she thought she was "doing well." (AR 58–49, 58–59.) Hence, she was surprised when her employer let her go after only three days. (AR 59.) Her employer told her that she couldn't "concentrate," didn't know what she was doing, and was "very slow." (AR 59.) Plaintiff testified that she would have wanted to remain at Palomar until she reached retirement age if she could. (AR 50, 52.)

Plaintiff further testified to hearing and seeing things, including "shadows" and "somebody talking in corners of [her] house." (AR 67.) Plaintiff also attempted to commit suicide on two occasions, though the details of those attempts are unclear from her testimony. (AR 69.) Lastly, Plaintiff testified to suffering from memory loss, including being unable to recall the questions asked by the ALJ or her answers. (AR 67–68, 72–73.)

In her appeal of the adverse eligibility determination, Plaintiff reported that her mental condition had worsened after her son attempted suicide and was involuntarily committed in February 2016. (AR 230, 234, 236, 578, 615.) As a result, she struggled to get through every day, experienced poorly controlled thought processes, and no longer wanted to do any household chores. (AR 234.)

At the hearing, when asked if she could perform the job of being a companion for an elderly person for eight hours a day and making sure that they took their medicine, Plaintiff testified that she was unable to work because she was afraid she would do something wrong. (AR 62.) She repeated, "I'm totally blanked out, and I don't even have any confidence in myself now," and confessed that she feared she might accidentally "kill somebody." (AR 63.) In response to the ALJ's question, Plaintiff noted that her mental health issues were holding her back. (AR 62–63.)

### ii. Lay Testimony from Plaintiff's Husband, Mr. Neal Contreras

On October 25, 2015, Plaintiff's husband, Mr. Neal Contreras, filed a functional report detailing his observations of Plaintiff's symptoms and functional limitations. (AR 292–99). Mr. Contreras described Plaintiff as experiencing limitations in her ability to

4

work mentally, emotionally, and physically. (AR 292.) He noted Plaintiff's daily activities, including cooking, cleaning, laundry, feeding dogs, and doing "patio/yard cleaning." (AR 293–94.) Mr. Contreras stated that Plaintiff had a hobby of watching television, though she could only pay attention closely for half an hour. (AR 296–97.) He also noted that Plaintiff spent 30 minutes or more cooking daily, about 30 minutes on housework daily, and about one to two hours per week out of the house shopping for groceries. (AR 294–95.) Mr. Contreras also noted that Plaintiff could sometimes drive and did not otherwise opine about her gardening. (AR 295.) Lastly, Mr. Contreras observed that Plaintiff was having difficulty maintaining interest or having the energy to engage in her daily activities, and had experienced problems with her memory, concentration, and understanding. (AR 294–95, 97.)

On November 5, 2017, Mr. Contreras submitted a signed letter including twelve examples of Plaintiff's problems and functional difficulties that he had personally observed over time. (AR 591.) This letter included apathy, appetite disturbance with weight gain, sleep problems, agitation, difficulty concentrating, suicidal thoughts, paranoid thinking, anxiety, apprehensive expectations, compulsions, and "recurrent and intrusive recollections of a traumatic experience from her former employer." (*Id.*)

## B. The Medical Record[1]

### i. Dr. Alan Chang

Dr. Alan Chang is Plaintiff's primary care doctor and treating physician. On September 25, 2015, Dr. Chang responded to questions posed by Plaintiff in connection with her long-term disability claim to her insurer. (AR 581.) In response to the questions "Am I totally disabled from doing my job as a nurse?" and "If so, have I been disabled since June 2014?", Dr. Chang stated that, "Yes, unfortunately you have not been able to work due to job stress." (AR 581.)

---

[1] Because Plaintiff does not dispute the ALJ's determination of Plaintiff's physical RFC, the Court sets out only the medical record relevant to Plaintiff's mental impairment. (*See* ECF No. 20 at 2.)

On December 10, 2015, Plaintiff first reported her mental health issues to Dr. Chang. (AR 561.) Dr. Chang noted that Plaintiff "ha[d] not expressed the extent of the stress and how it was affecting her until today's visit." (*Id.*) Dr. Chang gave Plaintiff a prescription for Zoloft and referred her to psychiatry. (AR 564.)

On January 11, 2016, Dr. Chang reported that Plaintiff had revealed the full extent of her family history of mental illness for the first time. (AR 565.) Plaintiff reported that her sister had committed suicide and that her daughters also suffer from depression. (*Id.*) Dr. Chang stated that "this seems to be a very strong family history of mental illness." (*Id.*) Dr. Chang opined that "[a]t this time [Plaintiff] is clearly not able to work or function because of the mental illness." (AR 568.)

On February 24, 2016, Dr. Chang observed that Plaintiff had been diagnosed with major depressive disorder with anxiety. (AR 576.) He opined that Plaintiff "is not able to work due [her] emotional and mental stress." (*Id.*) Dr. Chang described that Plaintiff's recent openness about her mental condition explained why "she was not able to perform at her job," and led him to conclude that Plaintiff "should not work." (*Id.*) Dr. Chang also noted in his assessment that Plaintiff's son had attempted to commit suicide and that Plaintiff "is now a caregiver at home for him." (AR 578.)

### ii. Dr. Ryan Greytak

On December 2, 2015, Dr. Ryan Greytak performed a Comprehensive Psychiatric Evaluation of Plaintiff. (AR 543.) Dr. Greytak determined that Plaintiff's condition was "most consistent with . . . a DSM 5 diagnosis of generalized anxiety disorder." (AR 548.) With respect to Plaintiff's mental functional capacity, Dr. Greytak opined that Plaintiff was mildly impaired as to her ability to "do detailed and complex instructions," "relate and interact with co-workers and [the] public," "maintain concentration and attention, persistence and pace," "associate with day-to-day work activity, including attendance and safety," "accept instructions from supervisors," "maintain regular attendance in the work place and perform work activities on a consistent basis," and "perform work activities without special or additional supervision." (AR 548–49.) Dr. Greytak also found that

Plaintiff had no impairment as to her ability to "understand, remember, and carry out simple one or two-step job instructions." (AR 548.) Dr. Greytak opined that Plaintiff's psychiatric prognosis was "fair." (AR 548.)

### iii.  Lee Reback Psy. D., P.A. and Brady Dalton, Psy. D.

As part of Plaintiff's initial disability determination, Lee Reback Psy. D., P.A. reviewed Plaintiff's medical records. (AR 90–92.) On December 20, 2015, Dr. Reback concluded that Plaintiff's mental status was "mildly impaired" in several areas, including but not limited to Plaintiff's ability "to do detailed and complex instructions," "to relate and interact with co-workers and [the] public," and "to maintain concentration and attention, persistence and pace." (AR 92.) Dr. Reback also opined that, "[f]rom a mental health perspective, the claimant appears to have the capacity to perform daily and routine activities." (AR 92.)

In addition, upon reconsideration of Plaintiff's disability request, Brady Dalton, Psy. D., reviewed Plaintiff's medical records and her disability determination. (AR 102–04.) Dalton noted that Plaintiff claimed that her condition began worsening before her evaluation by the consultative examiner. (AR 104.) Dalton opined that "it appears both initial and recon allegations were appropriately assessed initially and there is no change in circumstance at recon." (*Id.*) Thus, Dalton concluded that "a non-severe psych rating appears reasonable, and initial findings . . . are adopted." (*Id.*)

### iv.  Dr. Karine H. Khatchatrian and Mary Ellen Bennett, LCSW

On February 16, 2016, Plaintiff started receiving treatment from Psychiatric Centers at San Diego ("PCSD"). (AR 623.) Plaintiff was seen by two practitioners at PCSD, Dr. Karine H. Khatchatrian and Licensed Clinical Social Worker ("LCSW") Mary Ellen Bennett. (AR 569–75, 594–649, 664–72).

From February 16, 2016 to December 30, 2016, Plaintiff had over twenty sessions with a therapist, Mary Ellen Bennett. (AR 594–622; 629–631; 636–641; 644–649; 664–672.) At times, Plaintiff reported that her short-term memory was impaired and that she was experiencing auditory hallucinations, including "hearing voices of children." (AR

7

609, 616, 621.) She also was observed to suffer from a tangential thought process. (AR 598, 610, 613, 645.) On April 18, 2016, Plaintiff's therapist reported that she agreed with Dr. Chang's opinion that Plaintiff was "too impaired to work as a nurse." (AR 609.)

On September 21, 2016, Plaintiff had an initial psychiatric evaluation with Dr. Khatchatrian. (AR 658.) Plaintiff reported that she was anxious, agitated, and hyper, "jump[ing] from one activity to another but [] unable to finish any of them . . ." (AR 658, 660.) She also reported seeing passing shadows as well as experiencing paranoia, fleeting suicidal ideation, ideas of reference, and panic attacks. (AR 658.) Dr. Khatchatrian assessed Plaintiff's appearance as appropriate, behavior as unremarkable, mood as anxious, irritable, and hyper, and thought processes as showing a "flight of ideas." (AR 660.) Dr. Khatchatrian observed that Plaintiff's short-term memory was impaired, as Plaintiff was unable to recall three words in 5 min. (*Id*.)

On October 5, 2016 Dr. Khatchatrian noted "moderate improvement" in Plaintiff's condition but observed that Plaintiff continued to present with an "impaired memory and concentration," "racing thoughts," and an "anxious mood." (AR 654.) Plaintiff also demonstrated "less intense" paranoia. (*Id*.) By October 26, 2016, Dr. Khatchatrian reported "good improvement" in Plaintiff's condition. (AR 650.) Again, Plaintiff continued to present an "irritable, hyper and anxious" mood, "impaired memory and concentration," and "racing thoughts." (*Id*.) Plaintiff also exhibited "paranoia and visual hallucinations (sees shadows)." (*Id*.) In subsequent visits on November 17, 2016, December 8, 2016, and January 6, 2017, Dr. Khatchatrian noted "good improvement" in Plaintiff's condition. (AR 642, 632, 625.)

### v.  Vocational Expert's Testimony

Vocational Expert ("VE") Sonia Peterson also testified at the hearing. (AR 36, 73.) She characterized Plaintiff's vocational background as a general duty nurse at the medium exertion level, with a Specific Vocational Preparation ("SVP") of 7. (AR 48.) The ALJ asked the VE for other jobs to which Plaintiff's skills could transfer, and the VE offered (a) home attendant at the medium level with an SVP of 3 and 800,000 jobs

available; (b) phlebotomist at the medium level with an SVP of 3 and 120,000 jobs available; (c) hospital admitting clerk at the light level with an SVP of 4 and 80,000 jobs available; and (d) cardiac telemetry at the light level with an SVP of 5 and 60,000 jobs available. (AR 74–77.) The VE also suggested home attendant with an SVP of 3 and "about 400,000 jobs nationally." (AR 77–78.)

The ALJ posed various hypotheticals to the VE. First, he asked whether an individual with the same age, education, and experience as Plaintiff, who "can perform at the medium exertional level" but suffers from mental health issues such that they can only perform work that requires simple or detailed tasks, but not complex tasks, could perform Plaintiff's past work as a nurse. (AR 78–79.) The VE answered no and opined that this person could perform the other jobs, except the cardiac monitor. (AR 79.)

Next, the ALJ asked the VE whether the same person in the first hypothetical, could perform the VE's suggested jobs, excluding the jobs of home attendant and cardiac monitor, if limited to "light exertion work." (AR 79.) The VE said yes. (AR 79.)

Lastly, the ALJ asked the VE whether her evaluation would change if the hypothetical person suffered from more severe mental health issues, resulting in one day per week where they "are not giving conscientious work performance" and "where they're 30 percent off task." (AR 79–80.) The VE responded "that person would not pass a probationary period. So, there would be no work available." (AR 80.)

Plaintiff's attorney asked the VE how many days per month a person could miss and retain their employment. (AR 80-81.) The VE replied that, assuming a job requires a five-day work week, "missing two days a month consistently" would mean no work. (AR 81.) Finally, Plaintiff's attorney asked the VE what her assessment would be if a person was "consistently off task . . . at least 15 percent of the day." (AR 81.) The VE answered that such a person would not be able to work. (*Id.*)

### C. The ALJ's Decision

The ALJ applied the five-step sequential framework to determine that Plaintiff did not have a disability within the meaning of the Social Security Act from June 30, 2014

9

through the date of the ALJ's decision. (AR at 20–35.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2014. (AR at 22.) At step two, the ALJ found that Plaintiff suffered from three severe impairments: depression, anxiety, hypertension with kidney disease. (AR at 23.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR at 23–24.)

The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to "perform medium work . . . involving simple or detailed tasks but not jobs involving complex tasks or decisions." (AR at 24.) At step four, the ALJ found Plaintiff was unable to perform her past relevant work. (AR at 28.) At step five, the ALJ determined that Plaintiff could perform various jobs which exist in significant numbers in the national economy, and thus was not disabled. (AR at 29.) These include a home attendant, phlebotomist, hospital admitting clerk, and personal attendant. (AR at 29–30.)

## II. Legal Standards

### A. Standard of Review of Magistrate Judge's R&R

The district court's duties in connection with an R&R of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report . . . to which [an] objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of an R&R to which neither party objects. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *U.S. v. Reyna-Tapia*, 328 F.3d 114, 1121–22 (9th Cir. 2003) (*en banc*). When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

Because no objections have been filed, the Court assumes the correctness of Magistrate Judge Nita L. Stormes factual findings. *See Campbell*, 501 F.2d at 206.

**B. Standard of Review of the Commissioner's Decision**

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The court will uphold an ALJ's findings when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

The court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely for the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

**III. Analysis**

For purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant carries the initial burden of proving disability. *Id.* at § 423(d)(5); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

Here, the ALJ found that Plaintiff was not disabled. (AR at 29–30.) Plaintiff challenges that finding on two bases.[2] First, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. (ECF No. 12 at 12–15.) Second, Plaintiff argues that the ALJ failed to properly consider the opinions of her treating physicians. (*Id.* at 15–19.) Based on a review of the record, this Court finds that the ALJ committed harmless error in its treatment of Dr. Chang's opinion, but that the matter must nonetheless be remanded as the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony and failed to adequately develop the record. *See Garrison v. Colvin*, 759 F.3d 995, 1015–16 (9th Cir. 2014).

**A. The ALJ Improperly Rejected Plaintiff's Symptom Testimony.**

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

The ALJ determines "credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting

---

[2] Plaintiff styles his motion for summary judgment as containing three separate arguments. (ECF No. 12.) However, as Plaintiff's one-paragraph argument articulation makes clear, Section I is merely an introduction to the two substantive arguments that follow. (*Id.* ("for the reasons set forth below . . .")).

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). The decision "must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* (emphasis in original) (quotations omitted); *see also Lester v Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General [credibility] findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("[An ALJ] must state which pain testimony is not credible and what evidence suggests the complaints are not credible."); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (noting that the ALJ must provide "specific, cogent reasons for the disbelief" when it rejects the claimant's complaints").

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ "[m]ay consider a range of factors in assessing credibility, including (1) 'ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284).

Here, Plaintiff alleges a variety of mental impairments stemming from depression, stress and anxiety, including difficulty with her concentration, memory and auditory hallucinations. (AR 281, 284–85, 561, 597–98, 609–615, 654, 660.) After reviewing Plaintiff's testimony and medical record, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 25); *Lingenfelter*, 504 F.3d at 1036. The ALJ then rejected Plaintiff's symptom

13

testimony, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (AR 25.)

Therefore, the Court must determine whether the ALJ supplied clear, specific, and convincing reasons for disregarding Plaintiff's subjective testimony. S*ee Lingenfelter*, 504 F.3d 1036. In analyzing the ALJ's opinion and the Magistrate's R&R, the ALJ appears to reject Plaintiff's symptom testimony for three reasons: (i) that Plaintiff's symptom testimony is not supported by the medical record; (ii) that Plaintiff's symptom testimony is inconsistent with her activities of daily living; and (iii) that Plaintiff's symptom testimony is not to be believed because she did not seek psychiatric treatment prior to 2016. In light of the record below and the applicable law, the Court finds that these reasons are not clear, specific, and compelling, and remands for further analysis consistent with this Order.

### i. Medical Record

In determining Plaintiff's RFC and rejecting Plaintiff's symptom testimony that was presented on December 8, 2017, the ALJ summarized the "opinion evidence" and failed to identify *specific* statements from Plaintiff's testimony or functional report that were not credible. (AR 26–28); (*see also* ECF No. 21 at 12–13 (describing the ALJ's summary of the medical record)). "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion, is insufficient . . ." *Treichler*, 775 F.3d at 1103 (internal quotations and citation omitted). "The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." *Id.* (citing *Reddick*, 157 F.3d at 722 (internal quotations omitted)). Given the ALJ's failure to identify specific statements in Plaintiff's testimony as incredible, the ALJ's summary of the medical record and opinion evidence here are legally insufficient to discount Plaintiff's credibility. *See, e.g.*, *Stone v. Saul*, No. 2:18-CV-02862-CKD, 2020 WL

1332946, at *6 (E.D. Cal. Mar. 23, 2020) (finding ALJ's general summary of the medical record inadequate).

The Court, nonetheless, considers the weight of the evidence as it is a "relevant factor." *Black v. Comm'r of Soc. Sec. Admin.*, 433 F. App'x 614, 616 (9th Cir. 2011) (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). Here, Plaintiff's symptom testimony is undermined by some portions of the medical record and supported by others. On one hand, the medical record from December 2, 2015 and March 2, 2016 shows that three doctors – one doctor who assessed Plaintiff's functional limitations, and two others who reviewed her records – concurred that Plaintiff had only mild limitations resulting from her mental impairment. After examining Plaintiff on December 2, 2015, Dr. Greytak, for example, opined that Plaintiff was mildly impaired as to her ability to "do detailed and complex instructions," "relate and interact with co-workers and public," "maintain concentration and attention, persistence and pace," "associate with day-to-day work activity, including attendance and safety," "accept instructions from supervisors," "maintain regular attendance in the work place and perform work activities on a consistent basis," and "perform work activities without special or additional supervision." (AR 548–49.) Dr. Greytak also found that Plaintiff had no impairment as to her ability to "understand, remember, and carry out simple one or two-step job instructions." (AR 548.) Two psychiatrists from the Social Security Administration who reviewed Plaintiff's medical records, Dr. Lee Reback and Dr. Brady Dalton, concurred with Dr. Greytak as to Plaintiff's functional limitations. (AR 92, 103–05.)

On the other hand, there is a significant amount of evidence that followed the December 2015 evaluation which corroborates Plaintiff's testimony. First, there are the opinions of Dr. Chang, Plaintiff's primary care doctor. Dr. Chang opined on four separate occasions that Plaintiff was could not, or should not, be working. On February 24, 2016, for example, Dr. Chang opined that Plaintiff was dealing,

> "with significant emotional stress and depression . . . She clearly is not able to work due to the emotional and mental stress. This is inhibiting her ability

to concentrate. She works as a nurse and this will clearly affect her ability to perform work as a nurse as concentration is required to avoid medication errors . . . Given her current situation I agree that she should not work . . ."

(AR 576.) Six weeks prior, on January 11, 2016, Dr. Chang similarly opined that Plaintiff, "is suffering from major depressive disorder . . . [It] has been interfering with her sleep and she has been having difficulty concentrating. At this time, she is clearly not able to work or function because of the mental illness and how it affects her thought process." (AR 568.) One month before that, on December 10, 2015, Dr. Chang also opined that Plaintiff "is clearly suffering major depressive disorder. It is interfering with her sleep and she is having difficulty concentrating. She is clearly not able to function or work at this time due to her condition." (AR 564.) Even as early as September 22, 2015, Dr. Chang had opined that Plaintiff "ha[d] not been able to work due to job stress" and was "totally disabled." (AR 581.)

Plaintiff's symptom testimony also derives support from the 2016 treatment notes of LCSW Mary Ellen Bennett, even if her opinion as a licensed social worker is entitled to less deference than that of a medical doctor. *See Giese v. Barnhart*, 55 F. App'x 799, 800–01 (9th Cir. 2002; *Casner v. Colvin*, 958 F. Supp. 2d 1087, 1097 (C.D. Cal. 2013). LCSW Bennett maintained diagnoses of depressive and anxiety disorders throughout Plaintiff's treatment, regularly noted that Plaintiff struggled to manage the stressors in her life, and repeatedly found no change or improvement in Plaintiff's "mental status" throughout 2016. (AR 569–75, 594–649, 664–72).

Ultimately, the Court finds that the disparity between Plaintiff's testimony and the contradictory evidence in the medical record does not entitle the ALJ to discredit Plaintiff entirely. First, Dr. Greytak's medical examination, Dr. Dalton's opinion, and Dr. Reback's opinion all took place more than two years before the ALJ's hearing and well before Plaintiff began therapy. Further, an "ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence . . ." *Burch*, 400 F.3d at 680 (citing *Bunnell*, 947 F.2d at 345); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th

16

Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling (SSR) 16–3p (S.S.A. Oct. 25, 2017) (stating that SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"). Instead, an ALJ's decision to discount symptom testimony must be predicated on more "specific reasons." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015). Consequently, the Court rejects the ALJ's reliance on the medical record and finds that it is not a clear, specific, and convincing reason for rejecting Plaintiff's symptom testimony. *Burch*, 400 F.3d at 680.

### ii. Daily Activities

In addition to relying on the "opinion evidence," the ALJ also asserts that "the claimant's reported activities" support his RFC determination and implicitly contradict Plaintiff's symptom testimony. (AR 28.) The Magistrate Judge concurs, finding that the ALJ properly "addressed inconsistencies between Plaintiff's reported disabilities and her self-reported activities of daily living, when assessing the credibility of her subjective testimony." (ECF No. 21 at 15.) The Court, however, disagrees. Upon a review of the record, the Court finds that the ALJ mischaracterized Plaintiff's symptom testimony and then erroneously concluded that Plaintiff's symptoms were inconsistent with her activities of daily life.

The ALJ refers to various specific activities of daily living. The ALJ notes, for example, that Plaintiff "engages in gardening, some television watching, and cooking," and "is able to do grocery shopping." (AR 25.) The ALJ also recognizes that Plaintiff's "son had been released to [her] custody following a suicide attempt" and that she now "provide[s] care to" him. (AR 26.) The ALJ also mentions that Plaintiff "continued to travel to see family members and spend time with others." (AR 26.)

In providing these descriptions, however, the ALJ ignores testimony necessary to understand the scope of Plaintiff's activities. *See Garrison v. Colvin*, 759 F.3d 995, 1016

17

(9th Cir. 2014) (finding ALJ's selective presentation of daily activities was erroneous for failing to note plaintiff had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain). In Plaintiff's functional report, she offers limitations similar to those in *Garrison*. For example, Plaintiff states that she needs reminders to conduct some of her daily activities, including showering and taking medicine. (AR 280.) She submits that she spends only "an hour or two" daily on cleaning, laundry, ironing, and cooking, and that she "easily get[s] tired" doing her housework. (AR 280–81.) She limits her grocery shopping to one to two hours per week. (AR 282.) She also states that she needs to rest for 10 to 20 minutes after walking every 100 to 200 feet, and that she cannot concentrate for more than 20 to 30 minutes at a time during her housework. (AR 284.) At the hearing, Plaintiff added that her gardening is limited to watching and talking to her plants and that the local grocery store, Sprouts, is only five minutes away. (AR 57–58, 65–66.)[3] She affirmed that she cannot walk "so far," has limitations "driving or thinking or walking," and only "sometimes" drives. (AR 61.)

The ALJ has not addressed these limitations to Plaintiff's daily activities, (AR 23–28), and has not offered specific, clear and convincing reasons for disregarding them. *Smolen*, 80 F.3d at 1281. At certain points, the record directly contradicts the ALJ findings. The ALJ, for example, states repeatedly that "claimant identified no difficulties engaging in personal care, preparing simple meals, doing laundry and ironing, cleaning, driving, managing finances, and maintaining contact with family." (AR 24.) But, as

---

[3] Notably, though the ALJ does not cite this as a reason to disregard Plaintiff's symptom testimony, Plaintiff's testimony changes slightly as to gardening. In her functional report, Plaintiff answers "cooking favorite menu & gardening" in response to question 10, "What were you able to do before your illnesses, injuries, or conditions that you can't do now?". (AR 280.) At the hearing, she testifies that she is "still doing gardening," but that she only "talk[s] to [her] plants [and her] flowers basically." (AR 57.) This contradiction is not so glaring as to persuade the Court that Plaintiff lacks credibility. *Cf. Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (discrediting plaintiff for claiming his "back pain limited his ability to stand, sit and walk," and then testifying to working on a ranch by "building fences, running a tractor, feeding cattle, and laying irrigation waterlines"). In any event, the Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

18

noted, Plaintiff's functional report and testimony reveal limitations as to the time, energy, and focus which she can devote to those activities.

The ALJ's conclusion is also erroneous because Plaintiff's activities are consistent with her symptom testimony. The Ninth Circuit's caselaw is clear that "if a claimant is able to spend a *substantial* part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," the ALJ may be justified in disregarding the claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis added); *accord Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). On the other hand, the fact that a Plaintiff regularly engages in some activity does not disprove a disability. *Smolen*, 80 F.3d at 1287 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . ."). No court should penalize claimants "for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, especially where they do so "for therapeutic reasons." *Vertigan*, 260 F.3d at 1050.

Here, Plaintiff's regular, daily activities fit precisely into this category. The ability to spend "an hour or two" per day on cleaning, laundry, ironing, and cooking, to engage in daily gardening where Plaintiff merely "talk[s] to [the] plants," to occasionally drive a car to a grocery store located five minutes away, and to otherwise speak with family over the phone, or watch television regularly, are consistent with the symptoms that Plaintiff describes in her testimony and functional report. (AR 56–65, 280–82.) Outside of the television watching and phone calls, and in light of Plaintiff's stated limitations, Plaintiff's daily activities do not appear to take up a "substantial" part of her day, *Vertigan*, 260 F.3d at 1049, and it is not clear from the description of Plaintiff's activities of daily living that she could accomplish similar tasks in the workplace. *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Plaintiff's activities of daily living, moreover, align with the

19

activities recommended to Plaintiff to aid in her recuperation. (AR 603, 627, 634.) Even Plaintiff's ill-advised decision to visit a casino does not undermine her credibility altogether because that single trip was "not performed consistently" and does not "mirror the demands of a full-time job." *Meier v. Astrue*, 404 F. App'x 150, 152 (9th Cir. 2010) (finding ALJ's rejection of claimant's testimony was erroneous even where claimant "occasionally engage[d] in more strenuous activities such as lifting bags of salt and garbage and shoveling snow" because those activities were intermittent). Accordingly, the supposed inconsistencies between Plaintiff's daily activities and her testimony do not satisfy the requirement of a clear, specific, and convincing reason to discredit her symptom testimony. *Smolen*, 80 F.3d at 1281; *see Smith v. Berryhill*, 704 F. App'x 652, 653 (9th Cir. 2017) ("The ALJ did not make findings as to the pervasiveness of these activities, what they entailed, or how the physical functions displayed during the activities are transferrable to a work setting.")

The Court observes, moreover, that the ALJ's special reliance on Plaintiff's childcare responsibilities, among other daily activities, is misplaced. Discussing one of Plaintiff's daily activities, the ALJ emphasizes that Plaintiff "retained [the] ability to provide care to at least her son . . . [which] indicates [a] retained capacity to function in other vocational aspects of caregiving." (AR 26.) Plaintiff, however, does not explain, nor does the ALJ elicit testimony on, what conduct or skills Plaintiff displays in caring for her son that would be transferable to a role in "caregiving." In other words, there is nothing in the record to indicate exactly what it is that Plaintiff does "to provide care to" her son. (AR 576); *cf. Sapp v. Berryhill*, No. 8:18-00077-ADS, 2019 WL 1877446, at *2, *9 (C.D. Cal. Feb. 22, 2019) (affirming ALJ's reliance on plaintiff's daily activity of childcare for a two-year-old infant where plaintiff was "alone with him most of the time during the day" and the record included more detail as to what was entailed in his care); *see also Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) ("Absent specific details about Trevizo's childcare responsibilities, those tasks cannot constitute substantial evidence . . .") (citation omitted). Consequently, because "the ALJ must make [a] specific

20

finding relating the transferability of the daily activities to a work setting in order to conclude that the claimant's daily activities warrant an adverse credibility determination," the Court finds that Plaintiff's undefined and seemingly temporary responsibility to care for her 24-year-old son, (AR 236), does not provide a specific, clear, and convincing reason for disregarding Plaintiff's testimony. *Froom v. Colvin*, No. 12-CV-276-JLS, 2013 WL 3780155, at *12 (S.D. Cal. July 18, 2013) (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1999)).

Lastly, contrary to the Magistrate's conclusion, the Court is not persuaded that the precedents cited by the Commissioner – *Stubbs-Danielson* and *Morgan* – compel a different conclusion here. (ECF No. 21 at 17.) As the Magistrate Judge notes, the Ninth Circuit in *Stubbs-Danielson* found that "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances . . . suggest[ed] that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). And, though the Ninth Circuit's brief reasoning in *Stubbs-Danielson* fails to cite a single case for the applicable standard, *Morgan* makes clear that such a conclusion requires an implicit finding that the plaintiff "spen[t] a substantial part of his day engaged in" those activities and that those activities entailed "physical functions that are transferable to a work setting." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). For the foregoing reasons, the Court cannot make that "specific finding" here as the record does not show that Plaintiff's activities of daily living constitute a substantial part of her day. *Id.*; *Vertigan*, 260 F.3d at 1049.

### iii. Failure to Seek Treatment

The ALJ also rejects Plaintiff's symptom testimony because she did not seek psychiatric treatment prior to 2016. After summarizing Plaintiff's "[p]sychiatric treatment records," the ALJ commented that Plaintiff's "lack of reported problems prior to 2016

suggest caution in finding significant persistent issues." (AR 27.) In concluding the RFC

analysis, the ALJ again noted "the limited and conservative treatment record as to both

physical and mental impairments." (AR 28.) Though the Magistrate Judge did not issue a

separate recommendation on this reason, it is cited in the R&R's discussion of the

medical record as a reason to affirm the ALJ. (ECF No. 21 at 14.)

The Court finds that the ALJ's conclusion is not compelling because the ALJ does

not address Plaintiff's explanation for not seeking treatment earlier – an inability to

process her mental impairment. Certainly, "a claimant's failure to assert [a reason for not

seeking treatment], or a finding by the ALJ that the proffered reason is not believable,

can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989). And, courts are less likely to credit a plaintiff who only seeks

treatment "after she applied for disability benefits" or whose "resistance [to seeking

treatment] was attributable . . . her own personal preference" rather than her "mental

impairment." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

However, "[w]here a claimant provides evidence of a good reason for not taking

medication for her symptoms, her symptom testimony cannot be rejected for not doing

so." *Smolen*, 80 F.3d at 1284. Courts have found a number of reasons adequate in this

context. *See, e.g.*, *Smith*, 704 F. App'x at 653 (declining to take medication with which

plaintiff had previously attempted to commit suicide); *Smolen*, 80 F.3d at 1284 (declining

to seek treatment because plaintiff did not have insurance and thus could not afford

treatment). The Ninth Circuit, moreover, counsels against discrediting Plaintiffs with

mental impairments for failing to proactively seek treatment. *See Schiaffino v. Saul*, No.

18-35853, 2020 WL 110527, at *2 (9th Cir. Jan. 9, 2020) ("[I]t is a questionable practice

to chastise one with a mental impairment for the exercise of poor judgment in seeking

rehabilitation."); *Crose v. Berryhill*, 737 F. App'x 333, 335 (9th Cir. 2018) (same);

*Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("depression is one of the most

underreported illnesses in the country because those afflicted often do not recognize that

their condition reflects a potentially serious mental illness . . . that claimant may be one

of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis" to discount the claimant's testimony);

Here, Plaintiff adequately explains her reasoning for failing to seek treatment prior to December 2015, and the ALJ does not reject Plaintiff's "proffered reason." *Fair*, 885 F.2d at 603. As Dr. Chang notes following Plaintiff's December 10, 2015 visit, Plaintiff had not been "open about her overall medical condition" prior to that date, and was only able to express "the extent of the stress and how it been affecting her [at that] visit." (AR 561.) At Plaintiff's January 11, 2016 visit, Dr. Chang again remarked that Plaintiff was tearful and depressed, "like she was keeping secrets," and was only recently "more open about her overall condition." (AR 565.) Plaintiff's own testimony at her hearing before the ALJ corroborates Dr. Chang's observations, i.e., that Plaintiff was unable to adequately process her mental impairment and did not recognize she needed treatment:

> [ALJ]        When did you first tell [Dr. Chang] this?
> [Plaintiff]  I forgot. He said, [Plaintiff], I've known you for 20 years. What's going on with you? And then I told him, I'm sorry to say, but I think -
> [ALJ]        Okay. But it took a while for you to even tell your primary care doctor about those issues.
> [Plaintiff]  Yeah. He was mad. He said, [Plaintiff], I know you for how many years
> [ALJ]        Well, sometimes, people feel ashamed. Maybe --
> [Plaintiff]  Yeah. That's --
> [ALJ]        you felt embarrassed or ashamed.
> [Plaintiff]  what I say.
> [ALJ]        There's no reason to, but people sometimes feel that way.
> [Plaintiff]  Yeah. And then I told my history of my family.
> [ALJ]        Okay. I understand.

(AR 65.) This passage is doubly instructive as it also shows that the ALJ himself understood Plaintiff's reasoning for failing to seek treatment. And, despite this understanding, Plaintiff's own statements, and the medical record, the ALJ nonetheless did not even consider Plaintiff's reasoning, much less reject it. (AR 24–29.)

Furthermore, the record presents additional indicia of reliability for Plaintiff's belated effort to seek treatment of her mental problems. First, there is what Dr. Chang described as the "very strong family history of mental illness." (AR 568.) Plaintiff's sister

23

"suffered from severe major depression" and committed suicide. (AR 561.) Plaintiff's children also suffer from mental health issues: her eldest daughter takes "psychiatric meds" and suffers from "major depression"; her son was diagnosed with schizophrenia; and her youngest daughter takes "medication for major depression." (AR 65, 230, 565, 574, 629.) Plaintiff had earlier withheld this information, just as she had her own mental struggles, out of embarrassment, shame and denial. (AR 64.)

In addition, the events leading to Plaintiff's departure from work demonstrate her ongoing mental health issues, including her difficulty with concentration and memory loss, and denial about her impairment. In 2014, Plaintiff was accused of making a mistake while treating a patient. (AR 45–46.) Plaintiff denied making the mistake but, in the aftermath, found herself consumed with the fear that she "might accidently kill someone" if she returned to work as a nurse. (AR 46, 664.) Though at odds with the Plaintiff's denial of responsibility for making any mistake, this fear reflects the depression and anxiety that the ALJ accepted as severe mental impairments. (AR 23.)

Consequently, as Plaintiff's reasoning for delaying treatment is plausible in light of her background and history, and the ALJ does not address it, the Court finds that Plaintiff's alleged failure to seek medical treatment earlier is not a specific, clear, and convincing reason for disregarding Plaintiff's testimony.[4] *Smolen*, 80 F.3d at 1284.

**B. The ALJ Improperly Rejected Plaintiff's Husband's Testimony.**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050,

---

[4] In addition, given the ALJ's characterization of Plaintiff's treatment as "limited and conservative" prior to 2016, it bears noting that her treatment was not comparably "limited and conservative" in 2016 or 2017. From December 2015 to October 2017, Plaintiff was prescribed multiple medications to address her diagnosed mental impairments, including Sertraline (i.e., Zoloft), Risperidone, Alprazolam, Oxcarbazepine (i.e., Trileptal). (AR 267, 270–71, 572, 647.) The Court finds her treatment relevant to the ALJ's conclusion here. *See Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018) (rejecting ALJ's characterization of plaintiff's treatment as "limited and conservative" where she "she was prescribed a number of psychiatric medications").

1053 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(4). Such testimony is competent

evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d

1462, 1467 (9th Cir. 1996). If an ALJ disregards the testimony of a lay witness, the ALJ

must provide reasons "that are germane to each witness." *Id.* Germane reasons must be

sufficiently specific. *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district

court, is required to provide specific reasons for rejecting lay testimony").

     Here, the ALJ erred in rejecting Mr. Contreras's testimony.[5] Mr. Contreras offered

lay witness testimony twice in the record, first in his initial functional report dated

October 25, 2015, (AR 292–99), and then again via a signed letter dated November 5,

2017. (AR 591.) Mr. Contreras's functional report largely mirrors Plaintiff's own report,

and as such corroborates her symptom testimony. (*Compare* AR 279–87 *with* AR 292–

99.) Mr. Contreras's letter repeats some of the same symptoms as the two functional

reports – e.g., anxiety, memory issues, lack of sleep, difficulty concentrating, loss of

interest – and also alleges additional symptoms, including "[t]houghts of suicide . . ." and

"recurrent and intrusive recollections of a traumatic experience from her former

employer," found elsewhere in the record. (AR 68, 591, 658.) The ALJ assigned "little

weight" to Mr. Contreras's statements for three reasons: his relationship to the Plaintiff,

the alleged lack of support in the medical record, and the ALJ's perception that Mr.

Contreras's exaggerated Plaintiff's symptoms given her own testimony. (AR 28.)

     The ALJ's first two proffered reasons for dismissing Mr. Contreras's testimony are

not "germane" to the witness. First, the ALJ states that Mr. Contreras's "assessment of

[Plaintiff's] limitations appears exaggerated given the objective medical evidence . . ." in

the record. (AR 28.) However, "[c]ontradictory medical evidence is not a germane reason

---

[5] Contrary to Defendant's assertion, this argument is not waived. (ECF No. 16-1 at 11.) Plaintiff relies
on Mr. Contreras's statements, Defendant objects to Plaintiffs' reliance on them, and the Magistrate
discusses the ALJ's treatment of the statements. (*Id.*; ECF No. 12 at 12; ECF No. 21 at 18–19.)
Consequently, because the Parties have sufficiently addressed the issue, the Court considers this "simple
and straightforward question of law" ripe for adjudication. *See Thompson v. Runnels*, 705 F.3d 1089,
1100 (9th Cir. 2013).

to reject lay witness testimony." *Burns v. Berryhill*, 731 F. App'x 609, 613 (9th Cir. 2018); *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (finding that a lack of support from the "overall medical evidence" is also not a proper basis for disregarding lay testimony); *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record."). Moreover, much of Mr. Contreras's reported memory issues, lack of sleep, anxiety, and difficulties concentrating are accepted and parroted by Dr. Chang, Dr. Khatchatrian, and LCSW Bennett. (AR 576, 609, 615, 658.)

The ALJ also impermissibly asserts that Mr. Contreras's statements "are not from an unbiased individual nor a medical source." (AR 28.) That inference is plainly based on Mr. Contreras's marital relationship to the Plaintiff, and a familial relationship is not a "germane" reason to dismiss lay testimony. *See Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir. 2009) (finding that an ALJ gave "inadequate reasons for rejecting the wife's lay opinion testimony"); *Diedrich*, 874 F.3d at 640 (finding that claimant's close relationship with her fiancé was not a germane reason to discount the weight of his observations). Afterall, "regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). And, an ALJ's "rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her" subjective testimony "violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (emphasis in original); *see also* 20 C.F.R. § 404.1513(d)(4) (stating that evidence provided by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work").

Lastly, the ALJ also erred in dismissing Mr. Contreras's lay testimony on the basis that it is inconsistent with Plaintiff's statements that she has "an ability to engage in gardening and hobbies," and that "she has cared for her adult son when he needed care." (AR 28.) First, these activities are not discussed in Mr. Contreras's November 5, 2017 letter and, second, Mr. Contreras's functional report does not deny that Plaintiff engages in those activities. (AR 292–99, 591.) Likewise, Mr. Contreras's assertion that Plaintiff engages in "patio/yard cleaning" does not contradict Plaintiff's assertion that she engages in limited gardening consisting mostly of looking at her flowers and plants. (AR 281, 294.) The two are compatible and not inconsistent. Consequently, the ALJ's assertion that Mr. Contreras's functional report is inconsistent with Plaintiff's testimony is based on a misreading of the record and cannot serve as a "germane" to dismiss his statements.

### C. The ALJ Improperly Disregarded Some of the Opinion Evidence.

Lastly, the Parties dispute whether the ALJ's conclusion that Plaintiff is not disabled lacks substantial evidence. Specifically, Plaintiff argues that the ALJ disregarded the opinions of "Dr. Chang and the treaters at PCSD," which include LCSW Bennett and Dr. Khatchatrian, without providing a specific reason for doing so. (ECF No. 12 at 17; ECF No. 20 at 5–6.) The Commissioner contends that the ALJ's analysis is adequate. (ECF No. 16 at 20–25.) Here, the Court finds that the ALJ's analysis of Dr. Chang's medical opinions lacked necessary specificity and failed to account for his assertions that Plaintiff could not work.

### i. Legal Standard for Rejecting Conflicting Medical Opinions

Courts distinguish between three types of physicians who may provide medical opinions in a social security case: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). While the opinion of a

27

treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

A treating physician's medical opinion is given controlling weight where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . ." 20 C.F.R. § 404.1527. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1198). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quotation omitted). In other words, the ALJ "must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. (citation omitted). The need for a specific and legitimate reason reflects a recognition that the treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007).

Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, the ALJ commits error. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13.

### ii. The ALJ's Treatment of Dr. Chang, Dr. Khatchatrian, and LCSW Bennett's Opinions

The ALJ begins his discussion of Dr. Chang's medical opinions by referring explicitly to a letter dated September 22, 2015 that Plaintiff sent to Dr. Chang to complete. (AR 27, 581.) There, in response to the questions "Am I totally disabled from doing my job as a nurse?" and "If so, have I been disabled since June 2014?", Dr. Chang states, "Yes, unfortunately you have not been able to work due to job stress." (AR 581.) The ALJ attributes "little weight" to Dr. Chang's opinion because it "falls short of a detailed vocational assessment." (AR 27.) As the September 22, 2015 letter "is conclusory and brief and unsupported by clinical findings," the Court finds that the ALJ did not err in rejecting it. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *accord Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

However, at the same time, the ALJ's cursory review of Dr. Chang's other medical opinions fails to account for the gravamen of his concerns and expressly address other, relevant portions of the record. (AR 27.) For example, the ALJ broadly cites to Exhibits 1F, 16F, 8F, and 9F in asserting that his RFC determination "is based upon the claimant's overall records and improvement in symptoms with provided mental health care." (AR 27.) That summary conclusion elides several statements from Dr. Chang that Plaintiff was not able to work in light of her mental impairments.[6] *See, e.g.*, (AR 564 ("She is clearly not able to function or work at this time due to her condition.")); (AR 568 ("At this time she is clearly not able to work or function because of the mental illness and how

---

[6] Earlier in his opinion, when discussing Plaintiff's activities of daily living, the ALJ cites to two of the three progress notes mentioned here as absent. (AR 26.) The ALJ's prior citations summarize that evidence for the purposes of asserting that Plaintiff's symptom testimony conflicts with her childcare responsibilities, a reason earlier dismissed as insufficiently specific by this Order. Consequently, in contrast to the Magistrate Judge, the Court does not see how the ALJ's prior references to these progress notes provide a "specific and legitimate" reason to disregard Dr. Chang's opinion or absolve the ALJ of his responsibility to do so. (*Cf.* ECF No. 21 at 22.)

it affects her thought process.")); (AR 576 ("She is clearly not able to work due to the emotional and mental stress.")). The ALJ likewise fails to mention Dr. Chang's notations that Plaintiff needed psychiatric treatment, *see, e.g.*, (AR 564 ("I am going to schedule her for follow-up with psychiatry to help with management.")); (AR 576 ("She should continue to follow with outpatient psychiatric specialty care.")), or that Dr. Chang successfully referred Plaintiff for mental health treatment. (AR 230.) And, even if the ALJ's RFC is "consistent with" Dr. Chang's concern that Plaintiff cannot return to her past work as a nurse, that does not help explain how the ALJ accounts for Dr. Chang's repeated assertions that Plaintiff was unable to perform *any* work. (AR 27, 561–64, 565–68, 576–78.)

Consequently, while the ALJ's proffered reason for disregarding Dr. Chang's September 22, 2015 letter is not error, the ALJ fails to provide a "specific and legitimate" reason to discount Dr. Chang's equally concerning observations during treatment. *Garrison*, 759 F.3d at 1012. The ALJ's cursory discussion of Dr. Chang's treatment, moreover, eschews settled guidance from the Ninth Circuit that treating physicians are entitled to greater deference among competing medical opinions. *See Orn*, 495 F.3d at 633–34 (concluding that a treating physician's opinion is entitled to great weight even when not deemed controlling). And, the ALJ fails "to apply the appropriate factors in determining the extent to which the opinion should be credited," which "alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017); *see* 20 C.F.R. § 404.1527(d)(2) (listing factors to be considered in determining the weight of a treating physician's opinion). Thus, the ALJ erred in assessing Dr. Chang's opinions.

In contrast to the treatment of Dr. Chang, the ALJ's treatment of Dr. Khatchatrian's opinion and LCSW Bennett's opinion are not error. First, the Court concurs with the magistrate judge that the ALJ did not err in assigning "limited probative value" to the September 22, 2017 jury service note as it is summarily stated and offers no medical insight. *Tonapetyan*, 242 F.3d at 1149. More generally, and in contrast to Plaintiff's uncited claims, neither Dr. Khatchatrian nor LCSW Bennet "opined that

30

[Plaintiff] is significantly limited by her mental impairment." (*Cf.* ECF No. 12 at 17.) At most, the Court's review of the record indicates that LCSW Bennett opined that Plaintiff could not continue to work as a nurse, and the ALJ's RFC here is not inconsistent with that opinion. (AR 609 ("Precila's primary care physician, Dr. Alan Chang, has determined that she is too impaired to work as a nurse. After meeting with this patient for six visits, I am in agreement with Dr. Chang's assessment.")) Consequently, Plaintiff's argument that the ALJ improperly discredited their opinions is misplaced.

### D. Harmless Error Analysis

The Court now turns to the analysis of whether the ALJ's errors were harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id.* at 1115 (citations omitted). In other words, a Court must determine whether the ALJ's conclusion is supported by substantial evidence despite the error. *Blacksher v. Berryhill*, 762 F. App'x 372, 376 (9th Cir. 2019) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Molina*, 674 F.3d at 1115.

Here, the record establishes that the ALJ's assessments of Plaintiff and her husband were not harmless. As to the rejection of Plaintiff's symptom testimony, the Court has found each of the ALJ's proffered reasons are insufficiently "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Consequently, the ALJ's credibility assessment lacks substantial evidence. *Cf. Carmickle*, 533 F.3d at 1163 (finding the ALJ's inadequate assessment of Plaintiff's credibility survived harmless error analysis because it was nonetheless supported by a specific, clear and convincing reason). Similarly, because Mr. Contreras's report and letter substantially corroborate Plaintiff's testimony, and the ALJ provided no "germane" reason to disregard them, the Court "cannot say the ALJ's error here was nonprejudicial." *Stout*, 454 F.3d at 1056.

These errors are harmful, moreover, in light of the medical record supporting

31

Plaintiff's symptom testimony. For example, Dr. Chang's insistence that Plaintiff was unable to work, and discussion of her family's medical history, corroborate Plaintiff's stated symptoms. (AR 561, 564–65, 568, 576 578, 581.) Dr. Chang, Dr. Khatchatrian, and LCSW Bennett's observations of Plaintiff's mental impairments are also based upon examinations closer in time to Plaintiff's December 2017 hearing than were Dr. Reback, Dr. Dalton, and Dr. Greytak's opinions, and thus may provide a more accurate reflection of Plaintiff's current mental health. Lastly, in light of the Vocational Expert's opinion that no work would be available in the national economy for "someone [who] was consistently off task or unable to concentrate outside of normal breaks at least 15 percent of the day," (AR 81), Plaintiff's symptom testimony and Mr. Contreras's lay opinion, if credited, may be sufficient to establish that Plaintiff is disabled. At a minimum, the ALJ's rejection of their testimony is not "inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

As to the ALJ's treatment of Dr. Chang's medical opinions, the ALJ's error was likewise not harmless. First, the ALJ failed to provide an adequate reason for discounting Dr. Chang's multiple opinions that Plaintiff was unable work. *Cf. Williams v. Berryhill*, 728 F. App'x 709, 711 (9th Cir. 2018) (finding ALJ's reason for discounting a physician's opinion was erroneous but harmless because other legitimate reasons supported the opinion's treatment). Second, the ALJ's error is not rendered harmless by relying on Plaintiff's "overall records," (AR 27), or the Commissioner's observation that the decision comports with the opinions of other, non-treating physicians, including Dr. Greytak. (ECF No. 17-1 at 14.) Rather, because Dr. Chang served as Plaintiff's long-term family doctor and treating physician, and opined various times that Plaintiff could not work, Dr. Chang may have been entitled to greater deference. *See Pearce v. Astrue*, No. C09-04MJP, 2009 WL 3698514, at *7 (W.D. Wash. Nov. 3, 2009) (finding that an ALJ's failure to attribute treating physician status to a doctor was not harmless); *Logan v. Colvin*, No. ED CV 12-107-PJW, 2013 WL 5332454, at *3 (C.D. Cal. Sept. 23, 2013) ("As to the Agency's argument that Dr. Turner's opinion was properly ignored because it

3:19-cv-00482-GPC-NLS

was contradicted by at least four other doctors, that argument misses the point. All things being equal, where the doctors' opinions are in conflict, it is the treating doctor's opinion that is entitled to deference—even if it happens to be the minority view—unless there is a valid reason for questioning it.") Consequently, the Court cannot conclude that, were Dr. Chang's opinions fully credited, "no reasonable ALJ could have found Plaintiff disabled." *Id.* (citing *Stout*, 454 F.3d at 1056; *Carmickle*, 533 F.3d at 1162–63).

## IV. Conclusion

For the foregoing reasons, the Court **DECLINES TO ADOPT** the Magistrate Judge's R&R, **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** this matter for further proceedings consistent with this Order, including directing the Commissioner to (1) request an updated medical source statement from Plaintiff's treating physician inclusive of any limitations on her ability to work as a home attendant, phlebotomist, hospital admitting clerk or personal attendant; (2) allow Plaintiff to supplement the record with any additional relevant medical records; (3) reassess Plaintiff's credibility in light of any newly obtained information; and (4), if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational opportunities.[7]

**IT IS SO ORDERED.**

Dated: March 30, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[7] At the end of the December 2017 ALJ hearing, Plaintiff's counsel observed that the record lacked chart notes within the last year and suggested a psychiatric, consultative exam ("CE") with testing to round out the record. (AR 82.) As the Greytak CE took place in December 2015, the Court finds that updated information is necessary to properly evaluate the credibility of Plaintiff and her husband. *Cf. Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal."); *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (vacating decision of the district court with instructions to remand the matter to the Commissioner for further proceedings consistent with the order, including supplementing the medical record and reassessing claimant's credibility in light of newly obtained information).